[Civ. No. 4624. Second Appellate District, Division One.—March 20, 1924.]

# W. H. WILLSON, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[1] TRADE SECRETS—COMPULSORY DISCLOSURE—CONFISCATION OF PROPERTY.—The policy of the law is to foster and protect trade secrets, and unless the interests of justice imperatively demand their disclosure, a disregard of valuable property rights arising from enforced disclosure, whether by means of contempt proceedings or otherwise, approaches at least the confiscation of private property.

[2] ID.—MANUFACTURE AND SALE OF EXPLOSIVE—CHEMICAL CONSTITUENCIES—EXAMINATION OF OWNER.—In an action for damages for personal injuries suffered by plaintiff as the result of the explosion of an "actinic flare" manufactured by defendant under a process known only to the latter and by him sold to a moving picture concern of which plaintiff was an employee, where the complaint alleges that the chemical constituency of the flare was "highly and dangerously explosive," the determination of that issue is a material element of the action, and plaintiff is entitled to show, by the testimony of defendant, as if under cross-examination, just what chemicals or substances the flare was made of and their respective proportions.

[3] ID.—RIGHT OF OWNER TO PROTECTION—INJURY OF INNOCENT PERSONS.—While it may be of great pecuniary importance to the owner of a trade secret, because of the revenue or profit derived by him from the manufacture and the sale of the product dependent thereon, that the formula remain undisclosed, the right of the manufacturer to the protection of such trade secret must yield to the superior right of an innocent person who suffered injury through no fault of his own, but assumedly through the negligence of the manufacturer.

(1) 40 Cyc., p. 2532. (2) 25 C. J., p. 207, sec. 42. (3) 40 Cyc., p. 2532.

PROCEEDING in Certiorari to review an order of the Superior Court of Los Angeles County adjudging petitioner guilty of contempt for refusing to testify. Leslie R. Hewitt, Judge. Writ discharged.

The facts are stated in the opinion of the court.

Dudley Robinson for Petitioner.

1. Protection of trade secrets, note, 133 Am. St. Rep. 759. See, also, 28 R. C. L. 420.

Arthur Wright for Respondents.

HOUSER, J.—*Certiorari.* The purpose of the proceeding before this court is to determine the legality of a judgment of contempt and an order of commitment arising out of the refusal of a person adjudged guilty of the contempt to answer certain questions propounded to him as a witness.

The witness was the defendant in the action. He was the proprietor of a business engaged in the manufacture and sale of fireworks. As a part of such enterprise he prepared and sold an article known as an "actinic flare," which was particularly useful in taking photographs in the moving picture business and which, because of its efficiency and its comparative cheapness, was in great demand, and from the sale and manufacture of which the defendant derived a very considerable profit. The process of its manufacture was a secret known only to the defendant. The article was made in the form of a tube, at one end of which was a wooden handle suitable either for holding in one's hand or for attaching by means of a nail to a wooden post or pole or other object. In the other end of the tube was a fuse to be used for lighting the flare. Upon the flare was a printed statement in the following words:

"Two Minutes Actinic Flares. Should always be burned horizontally and held at arm's length. They start with a slow flame, but soon burst into a fierce flare. If it is desired to burn them from a post or elevation, drive a tenpenny nail into post; the nail head will pass into the hole in handle. Handle carefully; don't hammer or drive nails in them. If damaged they will not burn steadily."

It appears that the defendant sold several flares to a moving picture concern, and that one of its employees was injured by reason of the fact that one of the flares exploded in the hand of the employee after the flare had been ignited in the ordinary and customary manner of its use. The employee brought an action against defendant for damages, and among the allegations of the complaint, either as originally filed, or as amended on the trial, are charges to the effect that the flare was of a "dangerous and explosive character"; that the flare "contained chemicals which were or might easily become explosive"; that the plaintiff was not

familiar with the constituency or proportions which consti-
tuted the burning substance of said flare, "but alleges the
same was well known to defendant, and that they are
highly explosive"; also that when the chemical substance
of the flare becomes powdered or loose, the flare "becomes
highly and dangerously explosive."

By far the greater part of the foregoing allegations were
contained in the amendment to the complaint which was filed
after practically all the evidence in behalf of plaintiff had
been introduced on the trial; and, although the record does
not disclose that any answer was interposed thereto, the
parties and the court thereafter, when the question was
asked to which objection was made and which question and
answer are hereinafter set out, treated the matter as though
an answer had been filed by defendant denying each of such
allegations.  Counsel for defendant offered to stipulate that
under certain circumstances, such as if in the manufacture
of the flare the formula were departed from, or if the flare
were cracked or bruised or "beaten about the head," the
flare might explode; but refused to stipulate to the chemical
constituents of the flare, or what were the respective pro-
portions of its several parts or substances, or that the flare
was inherently dangerous.

On the trial, under the provisions of section 2055 of the
Code of Civil Procedure, the defendant was called as a wit-
ness, not for himself, but on behalf of the plaintiff, and was
thus being "examined by the adverse party as if under cross-
examination."  He was asked the following question: "By
Mr. Wright: Q. Mr. Willson, what are the chemical con-
stituents of that flare?  And by that I mean what is the
flare made up of?  What are the chemicals or substances or
drugs of which it is made, and what are their respective
proportions?"  Defendant's counsel interposed an objection
to the question that it was "incompetent, irrelevant and im-
material and calling for a privileged matter, a secret pro-
cess or trade secret; and, further, upon the ground that the
disclosure of the trade secret is not necessary to the decision
of this case, or in the interests of justice."  On advice of
counsel, defendant declined and refused to answer the ques-
tion which had been propounded to him.  The court ad-
judged him guilty of contempt of court for such refusal,
and the defendant was thereupon committed to the county

jail of Los Angeles County until he should answer the said question.

The question of the jurisdiction of the trial court to so adjudge defendant guilty of a contempt of the court and to order him committed by reason thereof is the only matter suggested for determination herein.

The general trend of authority, as recognized by text-writers and by courts alike, is to the effect that, while there is no absolute privilege (such as may be present where certain confidential relationships exist) to decline to reveal a so-called trade secret, yet unless the rights of innocent persons are dependent upon their disclosure, the property right of the possessor of such trade secret should be protected. Mr. Wigmore in his work on Evidence, volume 4, section 2212, lays down the principle that, ordinarily, there ought to be a recognition by the courts of such a privilege. His conclusions, so far as affects the facts of this case, are contained within his statement that ''no privilege of secrecy should be recognized if the rights of possibly innocent persons depend essentially or chiefly, for their ascertainment, upon the disclosure in question.'' [1] The policy of the law is unquestionably that of fostering and protecting trade secrets, as is shown by the laws affecting their registration, and unless the interests of justice imperatively demand their disclosure, a disregard of valuable property rights arising from enforced disclosure, whether by means of contempt proceedings or otherwise, approaches at least the confiscation of private property. (40 Cyc. 2532; 5 Jones on Evidence, sec. 892; 14 Cyclopedia of Evidence, p. 633.)

[2] It is important to determine, first, whether the allegations of the complaint were sufficient to authorize the reception of such evidence. Reverting to those allegations, it will be noticed that there are many expressions to the effect that the chemical constituency of the flare was ''highly and dangerously explosive.'' The meaning of such language is apparent. There can be no misunderstanding that the thought thereby sought to be conveyed is that the substance of which the flare is composed is explosive in the same sense that gunpowder or dynamite is explosive. In plain and forceful language the defendant is placed on notice of just what plaintiff claims is one of the properties of the substance which defendant sold for plaintiff's use without any

alleged adequate warning as to its dangerous qualities. Should the ingredients of the flare, taken either separately or in any combination of its various parts, however prepared, or however treated, be shown to be entirely harmless from an explosive standpoint, the case of the employee would present an entirely different aspect than though the formula for the manufacture of the flare were to present a chemical condition which, under circumstances as portrayed by the evidence, would certainly result in an explosion of very great force. The position of the injured employee with reference to the chemical composition of the flare is not one either of idle curiosity, or yet one of an interest from the standpoint of a business competitor or a rival. The case of the injured employee may of necessity require the showing which he has attempted to make. The result of the trial may depend absolutely upon the ability of the plaintiff to demonstrate the inherently dangerous qualities of the substance of which the flare is composed. His interest in knowing the chemical composition of the flare may be vital to his case in that in order to sustain his cause, he may be obliged to convince the trial court that the substance of the flare, at least in the condition it was at the time it was used, whether arising from rough physical usage, resulting in the tube and its contents being cracked or powdered, or from some other cause, was "highly and dangerously explosive." It would, therefore, become not merely incidental to plaintiff's cause of action, but would be the very crux of the matter. Far from being collateral, it would then present the paramount issue of the case. To say the least, the determination of the explosiveness of the flare is a material element of the action, and the offered evidence is unquestionably relevant thereto.

[3] While it may be of great pecuniary importance to the owner of a trade secret, because of the revenue or profit derived by him from the manufacture and sale of the product dependent thereon, that the formula for its production remain undisclosed, it may also well be of greater comparative consequence to one injured by or through its use that the secret be divulged in order that the rights of the injured person may be adequately protected. The right of the manufacturer to the protection of his trade secret ought to yield to the superior right of an innocent person who has suffered injury through no fault of his own, but assumedly through

the negligence of the manufacturer. It would, indeed, be a dangerous principle, and one inimical to the standards of justice, to hold that the right of an injured innocent person to redress should be withheld solely because the person causing the injury and responsible therefor was in possession of certain facts, however consequential to his private interests, without the disclosure of which such right could not be determined or enforced, and thus, in effect, uphold the wrongdoer in his wrongdoing. No man is entitled to be protected in his property right to a trade secret where, by the exercise of such right, he has wrought an injury to another and the disclosure of such secret is indispensable to the ascertainment of the truth and the ultimate determination of the civil rights of the parties.

If it be assumed that the article called an "actinic flare," instead of being composed of the various substances making up its composition, actually was composed of a substance known to the general public as gunpowder, and that the injured employee had no notice of its dangerous qualities other than such notice as was here given, it could not be doubted that the injured employee would be entitled to prove that the actinic flare was of a "dangerous and explosive character"; or that when its chemical substance was powdered or loose that the flare thereupon became "highly and dangerously explosive." Such being the case, there being evidence that an explosion occurred through which the employee received an injury, his right to show, if he can, the inherently dangerous qualities of the substance causing the explosion and the pertinency of such evidence is apparent.

It follows that the writ should be discharged. It is so ordered.

Conrey, P. J., and Curtis, J., concurred.