[No. F006152. Fifth Dist. Aug. 14, 1986.]

AGRICULTURAL LABOR RELATIONS BOARD,
Plaintiff and Respondent, v.
EXETER PACKERS, INC., et al., Defendants and Appellants;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Intervener and Respondent.

484

486

**COUNSEL**

Seyfarth, Shaw, Fairweather & Geraldson, George E. Preonas and Lani Poderick for Defendants and Appellants.

Daniel G. Stone, Michael E. Hersher, Nancy C. Smith and Cathy Christian for Plaintiff and Respondent.

Dianna Lyons, Ellen J. Eggers, Ira L. Gottlieb and Dean M. Beer for Intervener and Respondent.

## OPINION

**HANSON (P. D.), Acting P. J.**—Appellants Exeter Packers, Inc., Harding & Leggett, Inc., Orange Cove-Sanger Citrus Association, and Suntreat Growers & Shippers, Inc., operators of four citrus packing houses in Tulare County,[1] appeal from a judgment and order granting both the petition of the Agricultural Labor Relations Board (ALRB or Board) for a peremptory writ of mandate and the motion of the United Farm Workers of America, AFL-CIO (UFW or Union) for judgment on the pleadings in the Union's action for declaratory and injunctive relief. The actions arose after the Board promulgated regulations pertaining to the citrus industry. The citrus growers, arguing the regulations were invalid, refused to comply.

On April 24, 1985, the UFW served each of the citrus growers with a notice of intent to take access (NA) to their property and agricultural employees.[2] This service triggered the requirements of California Administrative Code, title 8, sections 20900, subdivision (e)(6), and 20915, subdivision (b).[3] Section 20900, subdivision (e)(6), requires a citrus employer to furnish the ALRB with a list of the owner(s)/lessee(s) of the property in question, and provide the union with the location of the employer's agricultural employee crews. Section 20915, subdivision (b), requires a citrus employer to submit to the ALRB a list of the owner(s)/lessee(s) of the property and certain other documents relevant to the ALRB's determination of the proper employer and bargaining unit.

On April 26, 1985, after the ALRB requested that appellants provide the information required by the citrus regulations, appellants refused, contending the regulations were invalid. On May 14, 1985, the Board filed a petition in Tulare County Superior Court seeking a peremptory writ of mandate to compel appellants to comply. The court issued an alternative writ of mandate

---

[1]Appellants will sometimes be referred to as the citrus growers.

[2]The parties stipulated to the filing of a joint appendix in lieu of clerk's transcript.

[3]The regulations are set forth in appendix "A."

ordering appellants to comply or show cause why compliance should not be compelled.

On May 22, 1985, the UFW filed a complaint in intervention seeking injunctive and declaratory relief on the grounds appellants had failed to comply with the citrus regulations. The Union also filed a motion for judgment on the pleadings. On June 17, appellants filed a cross-complaint seeking a judicial declaration as to the validity of the citrus regulations. The following day, the court heard oral argument on the alternative writ.

The superior court issued its decision and ruling on August 21, 1985. The court directed issuance of a peremptory writ of mandate ordering appellants to comply with the citrus regulations and granted the Union's motion for judgment on the pleadings. The judgment and order were filed and appellants appealed.

DISCUSSION

I

■ In this case, certain factors rendered the ordinary legal means for enforcing ALRB regulations inadequate: no unfair labor practice charges were filed; prompt enforcement of the regulations was necessary; and, importantly, the case was one of first impression and of general interest. Based on these circumstances, mandamus was a proper remedy for enforcement of ALRB regulations.

A writ of mandate may issue "to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . ." (Code Civ. Proc., § 1085.) Several requirements apply in mandamus: (1) the respondent must have a clear duty; (2) the petitioner must have a beneficial interest in the respondent's performance of that duty; (3) the respondent must have the ability to perform the duty; (4) the respondent must have failed to perform the duty or have abused its discretion in performing the duty; and (5) petitioner must have no other plain, speedy or adequate remedy. (Code Civ. Proc., §§ 1085, 1086; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565].)

We are aware of no cases in which a public agency has maintained an action for writ of mandate compelling a private party to comply with the agency's regulations. However, in *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 [156 Cal.Rptr. 1, 595

P.2d 579], the court addressed a closely related issue. The court held a "writ of review," provided for in section 1160.8 of the Agricultural Labor Relations Act (ALRA or Act), was a proceeding "for extraordinary relief in the nature of mandamus." (*Id.,* at p. 352.)[4] The court reasoned that a writ of review was like a writ of mandamus, in that it could be used to compel an agricultural employer to comply with an order issued pursuant to the Board's judicial power. "Compliance with an ALRB order sustained by an appellate court is clearly the performance of an act which the law specially enjoins. Mandate is repeatedly used to compel performance of duties by nongovernmental bodies and by officers of both incorporated and unincorporated associations. Agricultural employers and labor organizations seem indistinguishable." (*Ibid.*)

In the present case, a writ of mandate was a proper procedure to enforce Board regulations promulgated pursuant to the Board's legislative power. Three of the requirements for a writ of mandate were clearly met: the ALRB had a beneficial interest in the appellants' performance of the citrus regulations, and appellants were able but refused to perform. We disagree with appellants' argument that the other requirements were not met.

Appellants first argue the Board had other adequate means to compel enforcement of citrus regulations: the unfair labor practice procedure set forth in the ALRA; (§ 1160 et seq.) and the investigative subpoena procedure found in the citrus regulations. (8 Cal. Admin. Code, § 20915, subd. (c).) The argument is without merit.

■ Whether a plain, speedy and adequate remedy exists at law is a question primarily within the trial court's discretion. (*San Joaquin County Employees Assn.* v. *City of Stockton* (1984) 161 Cal.App.3d 813, 820 [207 Cal.Rptr. 876].) ■ Here, the trial court concluded the legal remedies available to the Board were inadequate. The ALRA unfair labor practice procedure could not be initiated until charges were filed. No charges ever were filed. Moreover, the unfair labor practice procedure is lengthy. In a case of first impression, where the outcome of other cases may depend upon the validity of the regulations in question, it was reasonable for the court to conclude it was necessary to decide the issue promptly. (See *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122 [142 Cal.Rptr. 325].)

The subpoena process in the citrus regulations was inadequate. It is slow and cumbersome. It could include a petition to revoke (Cal. Admin. Code,

---

[4]The ALRA is at Labor Code section 1140 et seq. All statutory citations are to the Labor Code unless otherwise indicated; sections 20900 and 20915 are in the Administrative Code, title 8.

tit. 8, § 20217, subd. (d)), an appeal to the Board (Cal. Admin. Code, tit. 8, § 20242, subd. (c)), and finally a petition for enforcement to the superior court. (§ 1151, subd. (b).) At a public hearing on the citrus regulations, an ALRB regional director testified that, on at least one occasion, this procedure was found so slow, the elections were eventually held without the information required by the subpoenas. Also, the crew location information required by the regulations frequently changed. The trial court noted, "It would be virtually impossible to timely obtain this information by means of an investigative subpoena on a daily basis during the access period."

■ Appellants next contend the provisions of the citrus regulations are ambiguous, conflicting and vague. They assert that under section 20915 it is unclear if the regional director may conduct an investigation if the NA does not raise any disputed issues. They also contend the regulations fail to specify what information is to be provided as to "locations."

We reject the argument. In spite of inevitable ambiguity, the regulations are sufficiently clear to enable appellants to comply. Given the complex nature of the citrus industry, after an NA is filed, the employer's identity should be sufficiently at issue for the regional director to conduct at least a cursory investigation. The term "locations" is necessarily vague because of the variety of geographical situations in the citrus industry.

## II

A. ■ A reviewing court's role in examining the validity of regulations promulgated pursuant to an agency's legislative power is limited.[5] "Our function is to inquire into the legality of the regulations, not their wisdom." (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].)

"[T]he judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' [citation] and (2) is 'reasonably necessary to effectuate the purpose of the statute' [citation]. Moreover, 'these issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with the strong presumption of regularity accorded administrative rules and regulations.' [Citation.]" (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].)

---

[5]The Board's legislative authority is set forth in section 1144, giving the Board the power to make, amend and rescind such rules and regulations as may be necessary to carry out the provisions of the ALRA.

Formerly, the determination that a regulation was "reasonably necessary" was for the agency; the reviewing court did not superimpose its policy judgment upon the agency "in the absence of an arbitrary and capricious decision." (*Ibid.*) However, effective January 1, 1983, the Government Code was amended to provide: "[A] regulation may be declared invalid if the agency's determination that the regulation is reasonably necessary to effectuate the purpose of the statute . . . is not supported by *substantial evidence.*" (Gov. Code, § 11350, subd. (b), italics added.)

■ No cases interpret this provision, but its legislative history demonstrates the Legislature intended to change the standard of review.

"Existing law provides that a regulation may be declared invalid if, on among other grounds, the court cannot find that the record of the rulemaking proceeding supports the agency's determination that the regulation is reasonably necessary.

"This bill would provide instead that a regulation may be declared invalid if the agency's determination that the regulation is reasonably necessary is not supported by substantial evidence." (Legis. Counsel's Dig., Assem. Bill No. 2820, 6 Stats. 1982 (Reg. Sess.) Summary Dig., pp. 587-588.)

Thus, a reviewing court must apply a "substantial evidence" standard when determining whether a regulation is reasonably necessary. **(6)** Although the trial court incorrectly used the "arbitrary and capricious" standard in determining the validity of the citrus regulations, the error was harmless.

When administrative agency action is judicially reviewable under a substantial evidence standard, the rule for the reviewing trial court and appellate court is the same. Usually, courts apply the substantial evidence test when reviewing administrative agencies' exercise of their adjudicatory power. In such cases, "[i]f the proper scope of review in the trial court was whether the administrative decision was supported by substantial evidence, the function of the appellate court on appeal is the same as that of the trial court, that is, it reviews the administrative decision to determine whether it is supported by substantial evidence." (*Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386 [146 Cal.Rptr. 892].) Similarly, when an agency promulgates a regulation, and that regulation is required to have evidentiary support, the appellate court's scope of review of the regulation is the same as the trial court's. (*Id.,* at p. 387.)

Regardless of the standard of review applied by the trial court, we make our own determination whether substantial evidence supports the Board's

conclusion the citrus regulations are reasonably necessary. Therefore, the trial court's error was not prejudicial.

B. Appellants make several arguments questioning the necessity of the citrus regulations. They first challenge the requirement citrus growers provide the Board and union with certain information, including a list showing the name(s) of the owner(s)/lessee(s) of their citrus groves and orchards. They argue the list requirement is irrelevant to work site access for union organizers.

We reject this argument. The purpose of the list requirement is not to help union organizers gain access to citrus employees, but to help the Board identify the employer and determine the employees who should be included in the bargaining unit.

Appellants next argue the information required by the citrus regulations will not aid the Board in determining the identity of the agricultural employer. They contend the information, such as landowner names, citrus grove locations, articles of incorporation and packing house membership agreements, does not provide the answer to the employer identity question.[6]

This argument is unpersuasive. The employer identity question is sometimes extremely complex. For example, in *Sequoia Orange Company* (1985) 11 A.L.R.B. No. 21, more than 20 separate businesses functioned as a single integrated entity and were found to be a single agricultural employer. The businesses included packing houses, a farming services company, a marketing agency, a payroll service company and various landowners or lessees.

Within less than seven days from the time a petition for an election is filed, a regional director of the Board must identify both the employees in the bargaining unit and the employer. He must also notify them of the election. (See § 1156.3.) If the regional director fails to notify even a few employees, it may constitute grounds for setting aside the election. Given these circumstances, the Board could reasonably conclude the information required by the citrus regulations is necessary to carry out its statutory mandate to conduct representation elections promptly.

---

[6]Appellants also assert their customer lists are trade secrets and are privileged from disclosure. However, even if the lists were trade secrets, appellants have failed to meet their burden of showing the value of the trade secret to the claimant outweighs the ALRB's need for the information. (See *Agricultural Labor Relations Bd.* v. *Richard A. Glass Co.* (1985) 175 Cal.App.3d 703, 715 [221 Cal.Rptr. 63].)

Appellants next challenge the requirements of section 20900, subdivision (e)(6)(D). Upon the filing of an NA or NO (notice of intent to organize), the regulation requires that the employer keep the union informed of the places and times its crews may be found. If the employer and the union are unable to agree on a plan for providing this information, the employer is required to prepare a daily schedule when and where each crew will be working. The employer must also prepare directions to the location of each crew, post the schedule and directions at least two hours in advance of the start of work, and make reasonable efforts to inform the union of any changes.

Appellants assert incorrectly "[t]he rulemaking file contains no evidence to support a conclusion that union organizers cannot locate citrus employees." When considering the need for crew location information, the Board looked to previous cases involving access to citrus employees. The Board specifically referred to the administrative law judge (ALJ) decision in *F&P Growers Association* (1984) 10 A.L.R.B. No. 28. There, the ALJ detailed the difficulties encountered by union organizers when trying to locate citrus employees.

In addition to *F&P,* the Board considered the testimony of UFW official Ben Maddock. He testified the big bushy trees and hilly terrain typical of orange groves made it difficult for union organizers to locate citrus employees in the field.

Finally, appellants argue the citrus regulations improperly delegate nonreviewable decisionmaking authority to the ALRB regional director in violation of section 1142, subdivision (b).[7] They point out that under the citrus regulations the regional director must determine which citrus grower's employees are in the bargaining unit. Such a preelection determination may not be reviewable by the Board or the courts unless an election is held and a tally of ballots issued.

Appellants' argument is contrary to the purposes of the Act. The citrus owners have no bargaining obligation if there is no election. The regional director's preelection bargaining unit determination is for election purposes; by itself, it does not compel anyone either to recognize or bargain with the union.

---

[7]Section 1142, subdivision (b), provides in pertinent part: "The board may review any action taken pursuant to the authority delegated under this section upon a request for a review of such action filed with the board by an interested party. Any such review made by the board shall not, unless specifically ordered by the board, operate as a stay of any action taken. The entire record considered by the board in considering or acting upon any such request or review shall be made available to all parties prior to such consideration or action, and the board's findings and action thereon shall be published as a decision of the board."

The consequences of the regional director's preelection bargaining unit determination are that the citrus growers must disclose the information required in the regulations, and they might be put to the expense of an election in an inappropriate unit. This burden is minimal, when weighed against the high priority the Act places on speedy elections. (§ 1156.3; see also Levy, *The Agricultural Labor Relations Act of 1975—La Esperanza de California Para El Futuro* (1975) 15 Santa Clara Law. 783, 797.)

The Board's procedure provides adequate postelection review. ██ ██ ██ ██ ██ The regional director's unit determination is reviewable by the Board either when a petition for certification is dismissed, or after an election has been held. (Cal. Admin. Code, tit. 8, § 20393.)[8]

The judgment is affirmed.

Hamlin, J., and Papadakis (V. N.), J.,* concurred.

Appellants' petition for review by the Supreme Court was denied December 11, 1986. Bird, C. J., did not participate therein.

---

[8]Appellants' argument the Union's motion for judgment on the pleadings was premature is without merit. The filing of the motion was consistent with the schedule the parties agreed to before the trial court on May 21, 1985. Appellants' assertion that the UFW lacked standing to bring a complaint for declaratory relief under Government Code section 11350 is without substance. It is clear that an actual controversy existed concerning the validity of the citrus regulations and that the UFW was an "interested party."

*Assigned by the Chairperson of the Judicial Council.