Filed 12/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARLIN V. MARTIN,<br><br>    Defendant and Appellant. | 2d Crim. No. B242447<br>(Super. Ct. No. MA054232-01)<br>(Los Angeles County) |

A juvenile defendant is convicted of numerous crimes, including attempted murder. He receives a sentence of two consecutive life terms. Newly enacted Penal Code section 3051 affords youth offenders a parole hearing at an earlier age than had they been an adult. We therefore conclude defendant's sentence is constitutional because it is not the "functional equivalent" of life without parole. (*Graham v. Florida* (2010) 560 U.S. 48; *People v. Caballero* (2012) 55 Cal.4th 262.)

Marlin V. Martin appeals a judgment following conviction of two counts of attempted murder, first degree residential robbery, escape, and first degree burglary, with findings of personal firearm use causing great bodily injury. (Pen. Code, §§ 664, 187, subd. (a), 211, 4532, subd. (b)(1), 459, 12022.53, subds. (b)-(d).)[1] We affirm.

---

[1] All further references are to the Penal Code unless otherwise stated. References to section 12022.53 are to the version in effect prior to January 1, 2012.

*FACTS AND PROCEDURAL HISTORY*

*(Counts 1, 2, 3, & 5)*

Eloina Gomez and her children, Ilse and Jonathan, lived downstairs in a Jackman Street residence in Lancaster.[2] Eloina and Ilse shared a bedroom in the back of the home, Jonathan slept in the front bedroom, and another family lived upstairs.

In the early morning of September 21, 2011, Eloina awoke and saw Martin, who was then 17 years old, standing outside the bedroom window, pointing a gun at her. He ordered her to be silent, entered the bedroom through the window, and demanded money. Awakened by Martin's voice, Ilse saw him pointing a gun at her mother. Martin walked around the bedroom and took money, two cellular telephones (one from a box) and an IPod.

Thereafter, Martin ordered Ilse to follow him. Eloina stood in front of Ilse to protect her. A sudden noise startled Martin, however, and he retreated through the window. Ilse then saw a second man outside the window and heard him state, "[N]ot to do it. . . . [I]t's not worth it." As Eloina and Ilse fled the bedroom, Martin fired the gun toward Ilse, who heard the gunshot and saw a flash of light.

The two women ran to Jonathan's bedroom and asked him to telephone for police assistance. As Jonathan spoke on the telephone, Martin appeared at Jonathan's bedroom window and fired his gun, striking Jonathan in the arm. When Ilse ran from Jonathan's bedroom, Martin also fired the gun towards her. She "felt the wind" of a projectile passing the right side of her body. Eloina, Ilse, and Jonathan ran upstairs and awaited the arrival of sheriff's deputies.

Jonathan received emergency medical care and surgery at a local hospital. He was hospitalized for four days and later received physical therapy for his injury. At the time of trial, Jonathan was recovering from the gunshot wound.

Ilse and Jonathan identified Martin in a photographic lineup and at trial as the man who entered their residence and shot at them. Eloina also identified Martin at

---

[2] We refer to the victims by their first names not from disrespect, but to ease the reader's task.

2

trial. Sheriff's deputies recovered Eloina's cellular telephone when they arrested Martin. Fingerprints taken from the Gomez residence and a telephone box in Eloina's bedroom matched those of Martin.

*(Count 4)*

Following his arrest, Martin complained of stomach pain. Sheriff's Deputy Mikael Smith accompanied Martin to the hospital for a medical evaluation. There, Smith removed the handcuffs from Martin to allow him to use the hospital bathroom. As Martin left the bathroom, he pulled an intravenous line from his arm and ran from the hospital. Deputies later found Martin in an apartment complex approximately one mile away.

*Conviction and Sentencing*

The jury convicted Martin of attempted murder (counts 1 and 2), first degree residential robbery, escape, and first degree burglary. (§§ 664, 187, subd. (a), 211, 4532, subd. (b)(1), 459.) It also found that he personally discharged a firearm causing great bodily injury. (§ 12022.53, subds. (b)-(d).) The trial court sentenced Martin to a life term with the possibility of parole, plus 25 years to life for the firearm enhancement for count 1, and a consecutive life term with the possibility of parole, plus 20 years to life for the firearm enhancement for count 2. Pursuant to section 654, the court imposed and stayed sentence for the remaining counts and an applicable firearm enhancement. The court also imposed a $5,000 restitution fine, a $5,000 parole revocation restitution fine (stayed), a $200 court security assessment, and a $150 criminal conviction assessment, and awarded Martin 315 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a)(1); Gov. Code, § 70373.)

Prior to sentencing, Martin asserted that the prescribed sentences for the attempted murder counts and the attendant firearm enhancements violate the constitutional command against cruel and unusual punishment pursuant to *Miller v. Alabama* (2012) 567 U.S. -, - [183 L.Ed.2d 407, 414-415] [mandatory life without parole sentence for juvenile homicide offender violates Eighth Amendment's prohibition against cruel and unusual punishment] and *Graham v. Florida*, *supra*, 560 U.S. 48, 82 [life

3

without parole sentence for juvenile nonhomicide offender violates Eighth Amendment]. The trial court noted that our Supreme Court was then considering *People v. Caballero*, *supra*, 55 Cal.4th 262, and it denied Martin's request to reduce the term of his sentence (*id.* at pp. 268-269 [sentence beyond juvenile offender's life expectancy for a nonhomicide offense violates Eighth Amendment's prohibition against cruel and unusual punishment]).

Martin appeals and contends that his 45-year-to-life sentence is cruel and unusual punishment within the meaning of the Eighth Amendment and *Graham v. Florida*, *supra*, 560 U.S. 48 and *People v. Caballero*, *supra*, 55 Cal.4th 262, 268-269. By supplemental briefing, he also argues that the trial court erred by permitting evidence that Martin's crime partner stated, "[N]ot to do it. . . .  [I]t's not worth it."

*DISCUSSION*

*I.*

Martin relies upon *People v. Caballero*, *supra*, 55 Cal.4th 262, 268-269, to argue that his sentence of 45 years plus two consecutive life terms is unconstitutional within the Eighth Amendment because it does not provide him an opportunity for parole. He asserts that his sentence is the "functional equivalent of a life without parole sentence" because he will be 76 years old at the time of his minimum eligibility parole date.  (*Id.* at p. 268.)  Martin points out that the National Center for Health Statistics estimates his life expectancy to be 64.6 years.[3]  (*Id.* at p. 267, fn. 3 ["'life expectancy' means the normal life expectancy of a healthy person of defendant's age and gender living in the United States"].)  He contends that *Caballero* compels reversal and remand for resentencing, particularly concerning the trial court's imposition of consecutive sentencing for the two counts of attempted murder.  (*Id.* at pp. 268-269; *id.* at p. 269 [sentencing court must consider all mitigating circumstances of juvenile's crime and life, including his age, whether he was a direct perpetrator or an aider and abettor, and his physical and mental

---

[3] We grant Martin's request to take judicial notice of the National Vital Statistics Reports, United States Life Tables, 2008.  (Evid. Code, §§ 452, subd. (h), 459, subd. (a); *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 535, fn. 7.)

4

development as bearing upon "when the juvenile offender will be able to seek parole from the parole board"].)

In *Graham v. Florida*, *supra*, 560 U.S. 48, 82, the United States Supreme Court explained, "The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide [the defendant] with some realistic opportunity to obtain release before the end of that term." In *Miller v. Alabama*, *supra*, 567 U.S. - [183 L. Ed.2d 407], the Supreme Court added that the reasoning in *Graham* "implicates any life without parole sentence imposed on a juvenile," including a sentence imposed upon a juvenile convicted of murder. (*Id.* at p. - [183 L.Ed.2d at p. 420].) A state is not required to guarantee eventual freedom, but must provide meaningful opportunity to obtain release based upon the defendant's demonstrated maturity and rehabilitation. (*Id.* at p. - [183 L.Ed.2d at p. 424].)

In *People v. Caballero*, *supra*, 55 Cal.4th 262, our Supreme Court reviewed the 110 years-to-life sentence imposed on a juvenile convicted of three counts of attempted murder. *Caballero* held that recent decisions of the United States Supreme Court compel the conclusion that a sentence of 110 years to life is the functional equivalent of a life without parole sentence. (*Id.* at p. 268.)[4] *Caballero* suggested the enactment of legislation establishing "a parole eligibility mechanism" for defendants serving de facto life sentences without the possibility of parole for nonhomicide crimes committed as juveniles. (*Id.* at p. 269, fn. 5.)

On September 16, 2013, the Governor signed Senate Bill No. 260 (2013 Reg. Sess.), amending sections 3041, 3046, and 4801, and adding section 3051. The amended and new legislation requires the Board of Parole Hearings to conduct "youth

---

[4] The constitutionality of a life-without-parole sentence for a juvenile offender convicted of first degree special circumstance murder is presently under review by our Supreme Court. *(People v. Siackasorn* (2012) 211 Cal.App.4th 909, review granted Mar. 20, 2013, S207973*; People v. Moffett* (2012) 209 Cal.App.4th 1465, review granted Jan. 3, 2013, S206771; *People v. Gutierrez* (2012) 209 Cal.App.4th 646, review granted Jan. 3, 2013, S206365.)

5

offender parole hearings" to consider the release of offenders who committed specified crimes as juveniles and who were sentenced to prison.

Section 1 of Senate Bill No. 260 refers to *Miller v. Alabama*, *supra*, 567 U.S. - [183 L.Ed.2d 407] and *People v. Caballero*, *supra*, 55 Cal.4th 262 and declares: "The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity . . . . It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established."

Section 3051 provides for a youth offender parole hearing during the 15th year of incarceration for a prisoner serving a determinate sentence (subd. (b)(1)), a hearing during the 20th year of incarceration for a prisoner serving a life term less than 25 years to life (subd. (b)(2)), and a hearing during the 25th year of incarceration for a prisoner serving a life term of 25 years to life (subd. (b)(3)). Section 3051, subdivision (d) requires the Board of Parole Hearings to "conduct a youth offender parole hearing to consider release." Section 3051, subdivision (f)(1) requires that any psychological evaluations and risk assessment instruments be administered by licensed psychologists employed by the board and that the evaluations and instruments "take into consideration the diminished culpability of juveniles as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual."

Newly created section 3051 thus provides Martin "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham v. Florida*, *supra*, 560 U.S. 48, 75.) Martin was 19 years old at his June 29, 2012, sentencing, and pursuant to section 3051, will receive a youth offender parole hearing at age 44. His present sentence therefore is not "the functional equivalent of a life without parole sentence." (*People v. Caballero*, *supra*, 55 Cal.4th 262, 268.)

Moreover, Martin is not entitled to a new sentencing hearing during which the trial court considers "all mitigating circumstances attendant in [his] crime and life."

6

(*People v. Caballero*, *supra*, 55 Cal.4th 262, 268-269.) The judicial decisions discussed here "merely hold that a juvenile defendant may not be incarcerated for life or its functional equivalent without some meaningful opportunity for release on parole during his or her lifetime." (*In re Alatriste* (Oct. 29, 2013, Nos. B248072, B248199) - Cal.App.4th -, - [2013 Cal.App. LEXIS 865].) Indeed, *Caballero* states that the court shall consider the mitigating circumstances "so that it can impose a time when the juvenile offender will be able to seek parole from the parole board." (*Caballero*, at p. 269.) Senate Bill No. 260 insures that Martin will be afforded a meaningful opportunity for release on parole after a set number of years based upon fixed criteria.

## II.

Martin argues that the trial court erred by permitting Ilse to testify that his crime partner, Corey Frazier, stated, "[N]ot to do it. . . . [I]t's not worth it." Martin contends the statement is inadmissible hearsay and does not satisfy the declaration against penal interest exception to the hearsay rule. (Evid. Code, § 1230.) He claims the error is prejudicial because his defense at trial asserted that Frazier shot at Ilse and Jonathan.

For several reasons, the trial court did not err in admitting evidence of Frazier's statement.

First, the statement is not hearsay because the prosecutor did not offer the statement to prove its truth, i.e., that "it[]" was "not worth it." (Evid. Code, § 1200, subd. (a) ["'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated"].)

Second, even if the statement could be construed as hearsay evidence, it is admissible as a statement against Frazier's penal interest. In determining whether a statement falls within the declaration against penal interest exception to the hearsay rule, the trial court must view the totality of the circumstances in which the statement was made, whether the declarant spoke from personal knowledge, the motivation of the declarant, and what was actually said, among other things. (*People v. Arauz* (2012) 210

7

Cal.App.4th 1394, 1400.) We review the trial court's ruling for an abuse of discretion. (*Ibid.*)

The trial court did not abuse its discretion by permitting evidence of Frazier's statement because the statement placed him at the crime scene and implicated him in Martin's crimes. (*People v. Cervantes* (2004) 118 Cal.App.4th 162, 175 [statement disserving of penal interest where it subjected declarant to risk of criminal liability to such an extent that a reasonable person in his position would not have made the statement unless he believed it true].) Frazier's statement is also trustworthy as having been made in a noncoercive setting between crime partners.

In any event, evidence of Frazier's statement is harmless pursuant to any standard of review. The statement is neither inflammatory nor unduly prejudicial to Martin. Moreover, there is compelling evidence that Martin committed the crimes. Ilse and Jonathan identified him in a photographic lineup and at trial. Eloina identified Martin at trial. Ilse described Martin as having an eyebrow piercing and, at the time of his arrest, Martin had a pierced eyebrow. Investigating sheriff's deputies found Martin's fingerprints on Eloina's window frame and on the telephone box in her bedroom. In addition, Martin possessed Eloina's telephone when arrested.

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

8

Hayden A. Zacky, Judge

Superior Court County of Los Angeles

_____


Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Esther P. Kim, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.