[No. A030692. First Dist., Div. Four. Sept. 23, 1985.]

HOFMANN CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
EDMUND J. SMAYSTRLA et al., Real Parties in Interest.

358

[redacted]

---

**COUNSEL**

Bernard C. Kearns, J. Timothy Doyle, Roxanne L. Holmes and Bronson, Bronson & McKinnon for Petitioner.

No appearance for Respondent.

Francis R. Giambroni, Jeffery V. Bacich, Katherine A. Montgomery and Giambroni, Dear & Bacich for Real Parties in Interest.

---

**OPINION**

**SABRAW, J.**—The issue presented by this case is whether discovery of certain admittedly relevant information can be accomplished by a discovery order requiring the defendant to turn over to plaintiff its complete list of customers. We conclude the discovery order is too broad and expansive and therefore grant relief.

In a petition for extraordinary relief, Hofmann Corporation challenges a discovery order allowing plaintiff in a products liability case to have access to Hofmann's complete list of customers with authority to contact all of them giving notice of plaintiff's injury and enquiring of each concerning their experiences with the product which allegedly caused damage to plaintiff. This is not a case involving an issue of relevancy. Hofmann concedes at the outset that information concerning prior accidents or complaints involving the product are relevant. In this case we are faced with the problem of balancing on the one hand the need to preserve full discovery of relevant information against the need on the other hand to be sensitive to

guard against possible abuses or oppressive means used in obtaining discovery.

On or about November 10, 1983, Edmund J. Smaystrla and Barbara J. Smaystrla, real parties in interest herein, filed a complaint alleging that Edmund J. Smaystrla was injured when the car he was working beneath fell from a Hofmann car lift. In their claim for exemplary damages, real parties alleged that the car lift was defective in that it had no arm lock mechanism. Real parties further alleged that defendants Hofmann Corporation and Mercedes Benz knew that the design was defective and increased the risk of serious injury yet decided, in conscious disregard of the safety of consumers, and without giving notice of the defects to consumers, placed the "GE" car lift on the market, and represented to the public the "GE" car lift's ability to perform safely.

During discovery, real parties requested all documents relating to complaints about the safety of Hofmann car lifts and all documents identifying the persons to whom Hofmann car lifts had been sold in the United States. Petitioner objected on the grounds of relevancy and because real parties sought to obtain petitioner's customer list, a list guarded as a proprietary matter by petitioner. Real parties noticed a motion to compel the information. In points and authorities in support of the motion, real parties' attorney stated: "In order to establish the accident record for HOFMANN lifts, plaintiff wishes to contact owners of HOFMANN lifts and inquire into their experience with and knowledge of the lift. The information sought would go to the issues of design defect, defendant's negligence and its knowledge that the lift was unsafe." In points and authorities, counsel for plaintiffs expanded on relevance, largely in terms of a need to verify the accident and complaint record which had been furnished to plaintiffs by Hofmann. Counsel summarized: "Plaintiffs respectfully submit that the Court order HOFMANN CORPORATION to produce its customer list based on the following. [¶] 1. The customer list presents plaintiffs' only means for obtaining a true representation of HOFMANN car lifts' accident history and learning what knowledge HOFMANN CORPORATION had and what conduct it pursued with regard to accidents involving its lifts; [¶] 2. The documents will provide information relevant to the issues of design defect, defendant's negligence, and defendant's conduct warranting punitive damages under Civil Code section 3294; [¶] 3. Any negative financial impact upon HOFMANN CORPORATION is de minimis in that plaintiffs are not a business competitor of HOFMANN CORPORATION and the effect on car lifts being presently sold is negligible as the lifts now incorporate as a standard feature arm lock mechanisms not available on the lift used by plaintiff."

In opposing the motion to compel production of the customer list, petitioners' attorney stated that petitioner had supplied detailed information

about other accidents, litigation and complaints. He conceded the relevance of this information but objected to furnishing the entire customer list on the ground that real parties intended to contact the customers about the accident and such contact would harm Hofmann's business. Real parties' attorney, however, took the position that the entire list was necessary because Hofmann might not know of all the accidents that had occurred and Hofmann might have been untruthful or dishonest. Responding to a challenge to produce any evidence of these possibilities, counsel for real parties pointed out that defendants had agreed as to relevance. She then explained that she had sent 21 inquiries to users of the lift whom she had learned about from Mercedes-Benz, a codefendant and Hofmann's distributor. She received responses from ten users two of whom indicated knowledge of incidents in which cars had slipped or fallen while being suspended from Hofmann lifts.[1] Another customer apparently called. Counsel did not know if this latter incident had been reported to Hofmann since she had "yet to check that out."

On August 20, 1984, respondent court filed an order compelling production of the customer list pursuant to Code of Civil Procedure section 2031 and limiting that use to the pending litigation. The order also required any letter that plaintiffs proposed to send to be first shown to Hofmann's counsel.

When Hofmann received the proposed letter, it moved for a protective order modifying the language of the proposed letter "[w]ithout waiving its legal objections to the issuance of the Court's original order compelling the further production of documents . . . ."

On February 20, 1985, the court authorized the mailing of the letter, denied petitioner's request that the mailing be monitored by a third party, required that any response to the letter be provided to petitioner's attorneys and directing that there be no followup to the letter absent court order. The letter to be mailed reads as follows: "Dear Hofmann Car Lift Owner: [¶] We represent John Smaystrla who was injured when a car he was working beneath fell from a Hofmann GE 2.5 Car Lift. [¶] Through discovery, we have learned that you are a Hofmann customer. We would appreciate hearing of your experience with the lift and the information you received at the time that you purchased a lift. Please answer the following questions and return your response to us in the self-addressed, stamped envelope enclosed. Thank you for taking the time to answer our questions. If you have any

---

[1] The inquiry merely asked for a "yes" or "no" answer to the question of knowledge of incidents. Thus it cannot be determined if these incidents were reported to Hofmann or if Hofmann reported them to real parties.

questions or wish to provide further information, please do not hesitate to write or call me at the telephone number given."

The questionnaire reads:

"1. How many Hofmann car lifts do you own? _____
2. When you purchased your Hofmann Car Lift were you informed that arm lock mechanisms were available for the lift? Yes No
3. Prior to receiving this letter, have you been informed that arm lock mechanisms are available for Hofmann Car Lifts? Yes No
4. Has a suspended vehicle slipped or fallen from any of your Hofmann Car Lifts? Yes No
5. Have you heard of a suspended vehicle slipping or falling from a Hofmann Car Lift owned by someone else? If so, whose lift was it? Yes No"

 Ordinarily information which is relevant to the subject matter of a law suit and not privileged is discoverable. However, a limited protection is given to sensitive information which people may wish to keep confidential, such as their financial dealings (see, e.g., *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]) and assets (see, e.g., *Richards* v. *Superior Court* (1978) 86 Cal.App.3d 265 [150 Cal.Rptr. 77]). "Where objection is made to discovery of such sensitive information in the trial court, the court must carefully weigh the competing factors in fashioning an order, considering: '. . . the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances. . . .' (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 382-383 [15 Cal.Rptr. 90, 364 P.2d 266].)" (*Dompeling* v. *Superior Court* (1981) 117 Cal.App.3d 798, 808-809 [173 Cal.Rptr. 38], overruled on another point in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 500 fn. 7 [213 Cal.Rptr. 256, 698 P.2d 159].) Where the court abuses its discretion in applying this balancing test and fashioning its order, relief is available by writ of mandate. (*Ibid.*)[2]

---

[2]The use of the prerogative writ in cases requiring the disclosure of confidential or sensitive information is justified by the same reasoning that justifies the use of the prerogative writ in cases requiring the disclosure of privileged information. The Supreme Court in *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309] explained: "The need for the availability of the prerogative writs in discovery cases where

The petitioner's customer list is clearly information falling within this sensitive category as evidenced by the fact that a confidential customer list is protected by the courts in the context of a trade secret. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 85, p. 5307.) Real parties contend that the customer list is necessary in order for them to find out how many similar accidents have occurred. The relevance of the similar accidents, contend real parties, is to the issue of punitive damages and product defect. Although partial discovery has been granted by way of a list of complaints and accidents furnished to real parties by petitioner and an agreement to furnish any further complaints, real parties contend they can only be assured that the list is complete by contacting the customers themselves.

Real parties' showing of a need for the customer list in order to establish a basis for *punitive damages* is inadequate. Only those accidents *known* to petitioner would be relevant. Not only has petitioner furnished the list of accidents of which it is aware, real parties in their questionnaire do not even ask if the customer informed petitioner of the accident. Apparently real parties themselves either do not believe their own punitive damage-relevance argument or intend to follow it up through another court order.

Real parties showing of a need for the customer list in order to establish that a product defect caused the accident is also inadequate. The general relevance of similar accidents has been conceded. Relevance, however, is only one aspect of need for the material which the court must balance against the burden to the other party in divulging confidential and sensitive material. Granted that real parties are seeking relevant material, they have other means of obtaining that material besides a query to all of petitioner's customers who have purchased a lift. First, they have been granted petitioner's own list of complaints and accidents. Not only have real parties the material furnished to them by petitioner, they have the customers furnished to them by Mercedes-Benz. With that amount of information already available, their showing of need for communication with the entire customer list is unpersuasive.

Balanced against the admitted relevance and the discovery already obtained is the damage to petitioner and the overbreadth of discovery. Turning to the latter factor first, the questionnaire apparently is to be sent to all

an order of the trial court granting discovery allegedly violates a privilege of the party against whom discovery is granted, is obvious. The person seeking to exercise the privilege must either succumb to the court's order and disclose the privileged information, or subject himself to a charge of contempt for his refusal to obey the court's order pending appeal. The first of these alternatives is hardly an adequate remedy and could lead to the disruption of a confidential relationship. The second is clearly inadequate as it would involve the possibility of a jail sentence and additional delay in the principal litigation during review of the contempt order.''

customers regardless of whether they are the purchasers of a similar lift or customers who have purchased later lifts equipped with the locking mechanism. As to the damage to petitioner's business from informing all its customers of the fact that the safety of its equipment has been questioned in litigation, the extent of damage is necessarily speculative but the potential for grave damage is abundantly clear.[3]

Real parties cite *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785 [183 Cal.Rptr. 810, 647 P.2d 86] as a comparable case. In *Colonial Life,* the court required an insurance company sued for a breach of the duty of fair dealing and good faith to reveal the names of all claimants whose claims were negotiated by the same adjuster and allowed the plaintiff to contact these claimants about the conduct of the adjuster. Initially, we must observe a critical difference in the breadth of discovery in the *Colonial Life* case where the court ordered limited access to only names of claimants whose claims had been processed by one specific employee of the insurance company as distinguished from our case where access to petitioner's entire customer list is sought. Furthermore, the Supreme Court in *Colonial Life* was concerned with the issue of whether discovery of the names and records of other insureds met the test of discovery relevance and whether the trial court should be required to prohibit plaintiff's counsel from soliciting employment from the other insureds. These questions are not involved in the instant case. Relevance is conceded and petitioner's argument is that real parties have already received the relevant information, i.e., the names and addresses of customers who have had sim-

---

[3]In opposing the motion to compel production, petitioner explained the damage it anticipated as follows: "These customers buy Hofmann products other than the electric automotive lift. Furthermore, they frequently buy more than one lift at a time and replace existing equipment as it becomes worn or outmoded. These products are used in places of employment. If an employer suspects, or is put on notice, that a machine of this magnitude is unsafe, he is legally and morally required to cease its use. The dissemination of such information, or even such an idea, would serve to devastate Hofmann's future sales and very possibly bring about requests for recisions of the sales contracts relating to the machines in the present custody of the customers. [¶] Hofmann is convinced of the safety of the electric automotive lift. There is nothing in its records, which are available to plaintiffs' counsel to indicate otherwise. Hofmann clearly acknowledges the relevance in a product liability case of prior accidents, injuries and complaints relating to the design, the manufacture or operation of either the specific product or similar products. For this reason, Hofmann has, and will continue to make all of this information available to the plaintiffs regardless of their numbers or the degree of their adversity. It is legally embarrassing and oppressive to Hofmann to have the quality of their product be smirched [*sic*] in the eyes of all of their existing customers. The mere allegation of unsafeness, even if never proven by the plaintiffs, will cause irreparable damage. The plaintiffs have not and cannot show good cause for obtaining the customer lists because the only information which this will lead to is information which is otherwise, and more easily and readily available to plaintiffs' counsel through the defendants themselves. Once the seed of suspicion regarding the product's safety has been sown, there is nothing, including a defense verdict, which can undo the widespread irreparable damage."

ilar accidents. The defendant did not make such an argument in *Colonial Life* nor could it have since it had furnished none of the information sought.

Where discovery of evidence of similar accidents has been discussed, it has been in the context of discovery of the records kept by the defendant. (See 2 Hogan, Modern Cal. Discovery (3d ed. 1981) § 10.11 and cases cited therein.) Real parties have that discovery and the issue presented here is whether they are entitled to go beyond to explore petitioner's entire confidential customer list.

Real parties have here presented but one instance of an accident with a Hofmann car lift not reported to them by petitioner.[4] They have not even documented that the accident occurred to a customer of Hofmann yet on the basis of this single instance, real parties are to be allowed access to a confidential customer list and approval of a letter to all customers informing them of serious allegations of product defect. We can but conclude that the trial court abused its discretion in allowing such broad and damaging discovery.

Let a peremptory writ of mandate issue directing respondent court to vacate its orders granting access to petitioner's customer list and authorizing the mailing of a letter to all customers.

Anderson, P. J., concurred.

---

[4]Real parties' only showing on this issue by affidavit is a June 1, 1984, declaration of their attorney, Katherine A. Montgomery, who states in relevant part:

"2. The list of names and addresses of defendant HOFMANN . . . customers will allow plaintiffs' counsel to obtain information about accidents similar to plaintiff's that HOFMANN either has no knowledge of or refuses to disclose. Based on plaintiff's personal knowledge of the locations of several other HOFMANN car lifts, plaintiffs' counsel has already investigated at least one similar incident in which a car fell from a HOFMANN car lift, resulting in property damage, under circumstances quite similar to the instant case. This incident was either unknown to or not revealed by HOFMANN. Plaintiffs have every reason to believe that there are other similar incidents.

". . . . . . . . . . . . . . . . . . . . . .

"4. HOFMANN's records, or HOFMANN's disclosure of its records, appear to be incomplete because of documents which may have been lost, discarded, or whatever. This is shown by the fact that co-defendant MERCEDES-BENZ OF NORTH AMERICA produced for plaintiffs correspondence to it from HOFMANN which HOFMANN failed to produce for plaintiff pursuant to an almost identically worded request for documents. [This letter does not bear on the existence of accidents.] . . .

"5. In HOFMANN's answers to plaintiff's second set of interrogatories, plaintiff disclosed the existence of a November, 1982, accident resulting in serious personal injury which had not been revealed to plaintiff in HOFMANN's answers to plaintiffs' first set of interrogatories. HOFMANN's attorney explained this as an oversight caused by the fact that the information had been received by telephone and had been forgotten about." This affidavit was filed in this court on March 18, 1985 in "Attachments to Petition."

**POCHÉ, J.**—I respectfully dissent from the decision of this court to set aside, as an abuse of discretion, a trial court's carefully crafted and balanced discovery order the issuance of which was not only required by law but was encouraged by the concession that the matters sought to be discovered were relevant.

Additionally, in my view, review by prerogative writ of this routine discovery order violates the directions given appellate courts of this state by the California Supreme Court. I begin with the latter proposition.

"The prerogative writs have been used frequently to review interim orders in discovery cases [citations]. But this does not mean that these discretionary writs will or should issue as of course in all cases where this court may be of the opinion that the interim order of the trial court was erroneous. In most such cases, as is true of most other interim orders, the parties must be relegated to a review of the order on appeal from the final judgment. As inadequate as such review may be in some cases, *the prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases.*" (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439], italics added.)

Inapplicable here is the sole exception spelled out in *Oceanside*—the review of questions of first impression that are of general importance to the trial courts and to the profession where general guidelines can be laid down for future cases. There is nothing at all unusual about this or any other request for documents which identify those persons who may have relevant information concerning the subject matter of the action. As this court put it so very bluntly in *Volkswagenwerk Aktiengesellschaft* v. *Superior Court* (1981) 123 Cal.App.3d 840 [176 Cal.Rptr. 874]: "A party to litigation is entitled to unimpeded access to persons who may have relevant information . . . ." (*Id.*, at p. 849.) In short, this is not a discovery matter raising questions of first impression of general importance to the trial courts and to the profession. Nor does the majority attempt to fashion general guidelines for future cases. Accordingly, I fail to see how this case falls within the *Oceanside* exception warranting review by prerogative writ.

The merits of the matter weigh no better for petitioner.

Under Code of Civil Procedure section 2031, subdivision (a),[1] any party may request another party to produce documents "which are relevant to the

---

[1]All statutory references are to the Code of Civil Procedure.

subject matter of the action, or are reasonably calculated to discover admissible evidence . . . ." Production of such information may be compelled upon a showing of good cause (§ 2034, subd. (a)), i.e., a showing of "specific facts justifying discovery and that the matter is relevant to the subject matter of the action or reasonably calculated to lead to the discovery of admissible evidence." (§ 2036, subd. (a).)

Real parties in interest filed documents spelling out in detail why the requested documents were directly relevant to the issues of design defect, negligence and punitive damages. There certainly is no question but that real parties amply met their burden of showing need. But even if some problem with that showing could be imagined, petitioner conceded relevance: ". . . there's just no question but that the matter they're seeking is relevant. We don't contest that at all. . . ."

Perhaps that blanket concession reflected a reading of *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161 [84 Cal.Rptr. 718, 465 P.2d 854], where the California Supreme Court put this all to rest by explaining "the relevance of the subject matter standard. must be reasonably applied; in accordance with the liberal policies underlying the discovery procedures, doubts as to relevance should generally be resolved in favor of permitting discovery [citations] . . . . An appellate court cannot reverse a trial court's grant of discovery under a 'relevancy' attack unless it concludes that the answers sought by a given line of questioning cannot as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial." (*Id.*, at p. 173, fns. omitted; accord *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785, 790 [183 Cal.Rptr. 810, 647 P.2d 86].)

Somehow however the majority finds an abuse of discretion based upon what it determines to be an incorrect balancing by the trial court of "the damage to petitioner's business from informing all its customers of the fact that the safety of its equipment has been questioned in litigation, . . ." (Majority opn., *ante*, p. 364.)

Assuming for purposes of argument that the discovery request required the trial court to balance something, I find no evidence that the trial court engaged in improper balancing. Even the majority dubs as speculative petitioner's claim of the damage arising from the discovered material. What bounces out from the record is that the trial court was duly—if not unduly— solicitous of such possible damage and gave more than adequate consideration to that especially in light of the unsatisfactory responses plaintiff had previously been given to its discovery request. That balancing and consideration is typified in the court's order that petitioner be allowed to see in

advance all proposed correspondence addressed to any of its customers. Thus all the balancing was in favor of petitioner.

What we are left with is a routine discovery order reviewed by prerogative writ and set aside because the majority dislikes discovery of customer lists. Not only is the ruling of this court unfair to both real parties in interest and the trial judge, it will encourage an unnecessary blizzard of petitions for extraordinary relief from routine discovery orders.

For these reasons, I would deny the petition for writ of mandate and discharge the alternative writ.

A petition for a rehearing was denied October 23, 1985. Poché, J., was of the opinion that the petition should be granted. The petition of real party in interest Smaystrla for review by the Supreme Court was denied December 5, 1985. Bird, C. J., was of the opinion that the petition should be granted.