Filed 2/19/15  Hoffman v. Super. Ct. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN ANDREW HOFFMAN,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>QUIDEL CORPORATION,<br><br>    Real Party in Interest. | D066513<br><br>(Super. Ct. No. 3-2013-00071216-CU-CO-CTL) |

PROCEEDINGS in mandate after superior court granted a motion to compel further responses to demand for inspection of documents.  Timothy B. Taylor, Judge.  Petition granted in part and denied in part.


Epstein Becker & Green, David Jacobs and Ted A. Gehring for Petitioner.

No appearance for Respondent.

Call & Jenson, Julie R. Trotter, Melinda Evans and Deborah A. Gubernick for Real Party in Interest.

Petitioner John Andrew Hoffman seeks extraordinary relief to compel respondent San Diego County Superior Court to set aside that part of its order granting the motion by real party in interest Quidel Corporation (Quidel) to compel further responses to Quidel's demand for inspection of documents.  In his petition for writ of mandate, Hoffman claims the trial court erred in ordering him to produce documents in response to two categories of requests:  (1) documents that he contends will disclose confidential or proprietary information of his current employer, Becton, Dickinson and Company (BD); and (2) documents dealing with his compensation at BD that he contends are subject to his constitutional right to privacy.

We will grant the petition in part, directing the trial court to set aside that portion of its order affecting responses to requests for documents that Hoffman contends will disclose BD's confidential or proprietary information, including trade secrets, and to reconsider Quidel's motion directed to those responses under the appropriate procedure. We will deny the petition as to the responses to requests for documents dealing with Hoffman's compensation at BD.

I.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.      *The Underlying Action*

In its complaint, Quidel alleges that it is in the business of "developing, manufacturing and marketing point-of-care . . . diagnostic tests for the detection and management of a variety of medical conditions and illnesses." As part of this business, the complaint further alleges, Quidel places great importance on its proprietary, confidential and trade secret information — including its technological advances, products and pricing information, competitive strategies and internal business plans — taking care to safeguard this information and to prevent its disclosure by closely managing who has access to confidential, proprietary and trade secret information.

As pertinent to the issues in this writ proceeding, Quidel avers that it hired Hoffman in July 2006 and that Hoffman left Quidel's employ in May 2013 in order to work for BD, one of Quidel's "main direct competitors."[2] During the time Quidel employed Hoffman, according to the complaint, Hoffman received regular promotions, ultimately holding the position of "Associate Director in Quidel's Molecular Diagnostic

---

[1]      Given the procedural posture of the underlying civil action, which we will describe in the text, *post*, the record on appeal and briefs contain only allegations and argument related to the claims being asserted — i.e., very little, if any, evidence. Thus, we do not intend any factual recitation or statement in this opinion to be a finding or an affirmance of any finding.

[2]      In his petition, Hoffman affirmatively acknowledges that "some of" BD's products "compete against those of Quidel."

Commercial Operations Department" at the time he resigned.[3]  As part of his job responsibilities over the years, Quidel alleges that it gave Hoffman access to "highly confidential information," describing this information generically as "Quidel's restricted customer database, confidential customer information, Quidel's strategies and views regarding key industry opinion leaders,[4] pricing and marketing strategies, and sales training materials."

The complaint alleges that prior to and as a condition of his employment with Quidel, Hoffman signed a written "Agreement Re Confidential Information, Inventions, Non-Solicitation and Conflict of Interest" (Confidentiality Agreement).[5]  The Confidentiality Agreement purportedly prohibits Hoffman from "*disclosing or using* any confidential information or trade secrets, either directly or indirectly," describing such confidential information generally as " 'formulas, processes, product research, customer lists, key customer contacts, manufacturing and other techniques, marketing plans, pricing strategies, financial plans and projections, inventory planning, and compilations

---

[3]    Previously, Quidel alleges, Hoffman held positions as "New Venture Program Manager"; "Manager, Sales Operations"; "Senior Marketing Manager"; and "Associate Director, Strategic Marketing."  We are not told what responsibilities or obligations were associated with these positions.

[4]    Hoffman tells us "key opinion leaders" are "individuals who have played a 'central role in Quidel's marketing strategy and who are used by the [Quidel] sales team as third-party evidence of product performance.' "

[5]    The parties have not provided a copy of the Confidentiality Agreement.  Our description and understanding of what is contained in the Confidentiality Agreement, therefore, is necessarily limited to allegations in the complaint and the arguments in written submissions.

4

of confidential information.' "  In one cause of action, Quidel (as the sole plaintiff) alleges that Hoffman (as the sole named defendant) breached the Confidentiality Agreement by, among other actions:  copying, gathering and collecting Quidel's confidential and proprietary information for his and BD's benefit; using Quidel's confidential and proprietary lists of customers and key contacts; and disclosing, using or mischaracterizing Quidel's strategic marketing plans.[6]  Quidel seeks a permanent injunction and damages.

During the discovery process and disputes that led to the instant writ petition, described more fully *post*, in February 2014 the court entered a protective order at the parties' request.  Among other matters, the 10-page document covered procedures available to the parties to protect against the improper disclosure of confidential or protected information produced during the litigation.

  B.  *Quidel Seeks Discovery from Defendant Hoffman*

As relevant to this writ proceeding, in November 2013 Quidel served Hoffman with an inspection demand, requesting in part the production of the following categories of documents and communications:[7]

> Request No. 6:  "All DOCUMENTS that constitute, refer or relate to customer lists of Quidel."
>
> Request No. 10:  "All DOCUMENTS that constitute, refer or relate to customer information of Quidel."

---

[6]  Quidel asserts some of these allegations on information and belief.

[7]  The inspection demand contained 30 separate requests.  The words in uppercase letters are defined in the request.  We do not include the definitions here, because they do not affect our analysis or the outcome.

5

Request No. 14:     "All DOCUMENTS that constitute, refer or relate to Quidel's contacts."

Request No. 15:     "All DOCUMENTS that refer or relate to key opinion leaders with whom Quidel has or has had a relationship."

Request No. 20:     "All COMMUNICATIONS between YOU and [BD] regarding Quidel's marketing and sales strategies for SOFIA."[8]

Request No. 21:     "All COMMUNICATIONS between YOU and [BD] regarding Quidel's customers."

Request No. 25:     "All COMMUNICATIONS between YOU and key opinion leaders with whom Quidel has or has had a relationship."

Request No. 26:     "All COMMUNICATIONS between YOU and distributors of Quidel."

Request No. 27:     "All DOCUMENTS that refer or relate to YOUR job duties at [BD]."

Request No. 28:     "All DOCUMENTS that constitute, refer or relate to YOUR compensation package at [BD], including the terms of any commissions, bonuses, or incentives that are part of YOUR compensation package."

Request No. 29:     "All COMMUNICATIONS that YOU have had with any other person regarding the study performed by Dr. Jim Dunn comparing SOFIA, Veritor and Binaxnow."[9]

The parties agree that these requests seek documents in two general categories:

(1) customers and distributors of Quidel and key opinion leaders with whom Quidel has

_____

[8]     Quidel tells us that SOFIA® is "a highly sophisticated, next generation influenza rapid-testing system" launched by Quidel at a time when Hoffman was employed by Quidel. Hoffman states, and Quidel agrees, that SOFIA® competes with a BD product, Veritor™, that Hoffman now markets.

[9]     Hoffman tells us that Dunn is a "key opinion leader for BD." We are not told what Binaxnow is or who owns it, though from the context of the request we infer it is testing system comparable to SOFIA® and Veritor™.

6

relationships; and (2) Hoffman's employment relationship with, including compensation from, BD. For convenience only, we will refer to these categories, respectively, as (1) Quidel relationship requests; and (2) Hoffman-BD employment requests.

Dissatisfied with Hoffman's responses to these requests[10] following a lengthy meet and confer process, in May 2014 Quidel filed a motion to compel further responses and to award sanctions against Hoffman and his attorneys.[11] For the most part, Quidel argued that the requested information was "reasonable, relevant and necessary," Hoffman's failure to respond more fully was unreasonable, and the existing protective order adequately protected Hoffman.

Although Hoffman opposed the motion on numerous grounds, we will discuss only those grounds relevant to the issues he raises in his writ petition. With regard to the Quidel relationship requests, Hoffman argued that because they sought "proprietary and confidential information" of nonparty BD, (1) he is precluded by his employment agreement with BD from complying with them; (2) the existing protective order was not adequate to protect Hoffman against claims by BD for breach of the employment

---

[10] We note that included among the general boilerplate objections asserted by Hoffman in his December 2013 written response (which was before entry of the protective order) was an objection to any request that called for the production of "documents containing proprietary information, trade secrets and/or other confidential business information," unless and until "an appropriate protective order regarding confidential information has been entered."

[11] At the same time, Quidel also filed motions to compel further responses to special interrogatories and requests for admissions. Neither they nor the court's rulings on them are at issue here.

7

agreement; and (3) Quidel was required to, but did not, make a showing of need stronger than mere relevance.[12] With regard to the Hoffman-BD employment requests, Hoffman argued that although the right to privacy in his financial documents required a showing of " 'direct relevance' " that Quidel had not established, Hoffman had produced "the incentive plans" with BD from which Quidel can ascertain whether and what types of incentives enhance his base compensation (for which he continued to assert his right to privacy). Finally, Hoffman argued that he and his attorneys should not be sanctioned, but that Quidel and its attorneys should be sanctioned for bringing the motion.

In reply, Quidel argued as to the Quidel relationship requests: (1) they did not seek responses concerning *BD*'s confidential information, but only what Hoffman did with *Quidel*'s confidential information; (2) Hoffman cannot hide behind his employment agreement with BD to avoid complying with otherwise valid discovery requests; (3) the existing protective order was adequate to prevent the improper disclosure of whatever

---

[12] Hoffman did not mention Evidence Code section 1060 (section 1060), which has been operative since January 1967 and provides in full: "If he or his agent or employee claims the privilege, the owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." (Stats. 1965, ch. 299, § 2.) Evidence Code sections 1061 and 1063 set forth lengthy definitions and procedures to be applied in civil actions in which evidence of trade secrets may be disclosed.

Of the 10 cases cited by Hoffman to the trial court, only one mentioned a trade secret, *Hofmann Corp. v. Superior Court* (1985) 172 Cal.App.3d 357 (*Hofmann Corp.*). Hoffman relied on the case in support of his position that because Quidel's requests called for the production of BD's confidential information, Quidel was required to make "a stronger showing of need for such discovery." In *Hofmann Corp.*, a products liability action, the requested customer list was a considered a trade secret containing "sensitive information," even though there were no anticompetitive issues associated with the lawsuit or the requested discovery. (*Id*. at p. 362.)

8

confidential information might be disclosed; and (4) if Hoffman was asserting a privilege, then he had the burden of clearly identifying the privilege and establishing the facts in support. As to the Hoffman-BD employment requests, Quidel argued that, because Hoffman's compensation package may show a motive for Hoffman to disclose information in breach of the Confidentiality Agreement (e.g., an incentive or ability to profit from such disclosure), Quidel met whatever threshold showing might be required. Finally, Quidel explained that it should not be sanctioned, because it brought its motion in good faith after extensive yet unsuccessful efforts to meet and confer.

The trial court issued a detailed written tentative ruling, entertained lengthy oral argument, and issued an oral ruling that adopted and added to the tentative ruling. The tentative ruling, which did not mention the Hoffman-BD employment requests, relied principally on Code of Civil Procedure sections 2017.010 and 2017.020, subdivision (a)[13] and was to grant the motion based on the following findings:

> "Hoffman apparently contends that just because his new employer [BD] thinks the documents sought [by the relationship requests] are secret, he may lawfully resist discovery. . . . Not so. The court finds that Quidel has requested documents which are or may lead to admissible evidence, and

---

[13] "Unless otherwise limited by order of the court in accordance with this title, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence. . . ." (Code Civ. Proc., § 2017.010.)

"The court shall limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence. . . ." (Code Civ. Proc., § 2017.020, subd. (a).)

9

that Quidel has otherwise justified the demands in question. There is already a protective order in place which forbids misuse of the discovered documents."

In the tentative ruling, the court also awarded Quidel $4,000 in sanctions against Hoffman and his attorneys. At the hearing, Hoffman strenuously argued against the above-quoted tentative ruling, emphasizing that the Quidel relationship requests called for information belonging to BD, not to Hoffman.[14] Based on the written and oral presentation described *ante*, the court indicated its intention to grant the motion, explaining to Hoffman's counsel:

> "What you're trying to do, it strikes me, is engraft onto a breach of contract case the kind of discovery protections that the legislature felt were appropriate in trade secret litigation. [Quidel] didn't sue your client for violating trade secrets. It's a straight breach of contract [complaint]. [¶] The jury instructions are right in CACI. They're very straightforward. They're well-established theories of law. And you want me to essentially sustain your objections, which would raise a breach of contract case to something that it's not, a trade secret case. [Quidel] didn't sue you[r client] for breach of trade secret violations."

With regard to the BD-Hoffman employment requests, the court acknowledged that its tentative ruling failed to discuss them and entertained additional argument. The court then confirmed its tentative ruling on all issues, adding that "the compensation information [be] provided, but . . . allowing the specific dollar amount of the salary information to be redacted."[15] The August 8 Order required Hoffman to provide

---

14   Again, Hoffman did not mention section 1060 or rely on authorities applying the trade secret privilege.

15   The exhibits Hoffman provided us in this writ proceeding contain only the tentative ruling dated August 5, 2014, and the reporter's transcript from the hearing on

10

amended verified responses within 10 days, to produce responsive documents within 20 days, and to pay sanctions of $4,000 within 10 days.

### C. *Quidel Seeks Discovery from Nonparty BD*[16]

In February 2014 — which was during the Quidel-Hoffman meet and confer process but before Quidel filed its motion to compel — Quidel served a subpoena on BD seeking production of certain business records related to Hoffman and Quidel. BD served written responses, including objections to producing "private, privileged, and confidential commercial, financial, and/or proprietary business information."

After Quidel and BD met and conferred concerning the requests and objections and the limited documents produced, Quidel filed a motion to compel BD to produce additional documents. This motion was fully briefed and set to be heard on August 15, 2014, one week after the hearing on Quidel's motion directed to Hoffman to compel further discovery responses. Although BD's opposition did contain specific arguments

---

August 8, 2014, in which the court adopted the tentative ruling with the additional oral ruling on the Hoffman-BD employment requests. We will refer to the August 5 tentative ruling together with the oral ruling on the Hoffman-BD employment requests as the "August 5 Order."

[16] On our own motion, we take judicial notice of our nonpublished opinion in *Becton, Dickinson and Co. v. Superior Court* (Oct. 7, 2014, D066518) (*BD* opinion) as well as the files and records in the matter (No. D066518). (Evid. Code, §§ 452, subds. (a), (d)(1), 459; *McClintock v. West* (2013) 219 Cal.App.4th 540, 543, fn. 2 [judicial notice taken of nonpublished opinion]; *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1529, fn. 7 ["Judicial notice may be granted if the documents for which notice is sought are at least minimally relevant to the instant appeal."].)

11

directed to trade secrets and cited authority expressly applicable to the trade secret privilege found in section 1060, it did not cite or mention section 1060.

The day before the hearing on Quidel's motion directed to BD, BD filed a motion for a protective order for which it sought protection from having to disclose "highly confidential trade secrets, proprietary information, and confidential information." In support of this motion, *for the first time*, section 1060 was brought to the court's attention.

Prior to the August 15, 2014 hearing on Quidel's motion to enforce its subpoena, the court issued a tentative ruling consistent with its final ruling the week before on Quidel's motion directed to Hoffman's responses. At the hearing, BD's counsel suggested that Quidel's subpoena called for the production of BD's "confidential and trade-secret documents" and that there were special procedural protections for discovery in cases that involve trade secrets. The court responded:

> "This is a breach-of-contract case, sir. [¶] . . . [¶]
>
> "[Code of Civil Procedure section 2019.210[17] d]oesn't apply, sir. It doesn't apply. It's not a trade-secret case. They have not filed a complaint invoking that Section 2019[.210] construct. I had this conversation just last week [at the hearing on Quidel's motion directed to Hoffman]; okay? And I thought I made my thoughts on that subject quite clear, that you can't [e]ngraft that whole construct on a straight-up breach-of-contract case."

---

[17]    "In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . , before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." (Code Civ. Proc., § 2019.210.)

12

The court expressly declined to delay ruling on Quidel's motion in order to first consider BD's motion for a protective order. Following argument, again relying on the relevance standard of Code of Civil Procedure section 2017.010 (see fn. 13, *ante*), the court confirmed its tentative ruling with modifications related only to redacting Hoffman's salary, requiring BD to produce the responsive documents within two weeks.

D.      *The Parallel Writ Proceedings*

Prior to the expiration of the 20-day period in which Hoffman was required to produce the responsive documents, on August 22, 2014, he initiated the instant proceeding by filing a petition for writ of mandate directing the respondent court to set aside the August 8 Order and seeking an immediate stay of the August 8 Order. With regard to the Quidel relationship requests, Hoffman argues that by having to produce the requested documents, he necessarily will disclose BD's confidential proprietary information, including trades secrets,[18] in violation of his employment agreement with BD.[19]  With regard to the Hoffman-BD employment requests, Hoffman argues that by

---

[18]    Although Hoffman has consistently argued that the responsive documents contain confidential and proprietary information, in his writ petition Hoffman relies on section 1060 and cases that apply the trade secret privilege in his writ petition *for the first time*.

[19]    Hoffman tells us that as part of his employment agreement with BD he promised: "I agree not to  . . . disclose, either during my employment or thereafter, any confidential, proprietary, non-public information, whether of a technical or non-technical nature, about the business, technology, products, and/or customers of [BD], or about my activities as an employee of [BD], which was obtained or acquired by me during the term of my employment with [BD] ('Confidential Information'), unless authorized beforehand in writing by [BD] . . . ."  Hoffman also relies on a letter to his attorney from BD's attorneys in which they "remind Mr. Hoffman of his confidentiality obligations" quoted above and

producing the requested documents his "constitutional right to privacy" will be violated.[20] On August 26, 2014, we issued a stay of the August 8 Order; Quidel was invited to and did submit an informal response to the petition; on September 12, 2014, we issued an order to show cause why the requested relief should not be granted; Quidel filed a formal return; Hoffman filed a reply to the return; and the matter was orally argued in February 2015.

Meanwhile, prior to the expiration of the two-week period in which BD was required to produce responsive documents, on August 26, 2014, BD filed a petition for writ of mandate directing the respondent court to set aside its order directing the production of the subpoenaed documents and seeking an immediate stay of the order. This is the proceeding of which we have taken judicial notice, No. D066518. (See fn. 16, *ante*.) On October 7, 2014, we issued a writ of mandate directing the trial court to stay its order directing BD to produce documents until after the court hears and decides what was then BD's pending motion for a protective order. (*BD* opinion, *supra*.) In our opinion, we noted the trial court's error in concluding that trade secrets were not at issue in Quidel's one cause of action against Hoffman for breach of contract. (*Ibid.* [application

advise Hoffman of their "belie[f] there is a substantial risk that Mr. Hoffman's production of many of the requested records would violate the terms of his agreement with BD."

20 Although Hoffman does not tell us on which provision(s) of which Constitution[s] he relies, we have assumed it is article I, section 1 of the California Constitution, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*." (Italics added.)

14

of the trade secret privilege "is not determined based on the claims asserted by the plaintiff"].)

We now turn to resolving the issues raised in Hoffman's writ petition.

II.

DISCUSSION

A.     *Quidel Relationship Requests*

In determining whether to allow discovery of confidential proprietary information, the trial court is required to conduct a balancing test (which we discuss in greater detail, *post*).  (*Hofmann Corp.*, *supra*, 172 Cal.App.3d at pp. 362-363 [customer list]; *Bridgestone/Firestone, Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384, 1393 (*Bridgestone*) [trade secret].)  We review the court's application of this balancing test for an abuse of discretion.  (*Hofmann Corp.*, at p. 362.)  As a general rule, a trial court abuses its discretion only when, in its exercise, it " 'exceeds the bounds of reason, all of the circumstances before it being considered.' "  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*).)  In addition, as applicable here, "[a] trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand."  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85 (*Paterno*); see *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782 [abuse of discretion where court "erred in acting on a mistaken view about the scope of its discretion"].)

Here, the court granted Quidel's motion based entirely and exclusively on Code of Civil Procedure sections 2017.010 and 2017.020, subdivision (a).  Together, they establish generally that "any matter, *not privileged*, that is relevant to the subject matter

15

involved in the pending action" is discoverable (Code Civ. Proc., § 2017.010, italics added), subject to limitation if the court "determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence" (Code Civ. Proc., § 2017.020, subd. (a)). Code of Civil Procedure section 2017.010 describes a matter as "relevant" if "the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."

As previewed *ante*, section 1060 creates a privilege for trade secrets and authorizes the owner of a trade secret to refuse to disclose the secret "if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." (*Ibid*.) In an opinion applying section 1060 in the context of civil discovery, the court held that disclosure of a trade secret cannot be required simply because the requested information is discoverable under the general standard for discovery of matter that " 'appears reasonably calculated to lead to the discovery of admissible evidence.' " (*Bridgestone*, *supra*, 7 Cal.App.4th at p. 1390, quoting from Code Civ. Proc., former § 2017, subd. (a).) This broad standard, now found in Code of Civil Procedure section 2017.010,[21] applies only to matters that are *not privileged*. (*Bridgestone*, at pp. 1390-1391.)

Section 1060 requires a trial court to apply a heightened standard before compelling the disclosure of documents containing trade secrets. (*Bridgestone*, *supra*, 7

---

[21]     Code of Civil Procedure section 2017.010 continues former section 2017, subdivision (a) without substantive change. (Cal. Law Revision Com. com., 21 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 2017.010, p. 523.)

Cal.App.4th at p. 1393.) Under this standard, the party claiming the privilege must first establish the information sought is privileged. (*Ibid*.) If it does, then the "party seeking discovery must make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." (*Ibid*.) If that showing is made, the burden shifts to "the holder of the privilege to demonstrate any claimed disadvantages of a protective order." (*Ibid*.)

In this writ proceeding, although Hoffman relies on section 1060 and *Bridgestone*, *supra*, 7 Cal.App.4th 1384, he did not bring either authority to the attention of the trial court and, indeed, argued only that the requested documents were not relevant under Code of Civil Procedure section 2017.010 (the principal statute on which the court based its ruling). That said, Hoffman did argue that because Quidel's requests called for the production of confidential and proprietary information of BD, Quidel was required to make a stronger showing of the need (as opposed to mere relevance under Code Civ. Proc., § 2017.010) for the requested discovery. In support of this argument, Hoffman cited *Hofmann Corp.*, *supra*, 172 Cal.App.3d 357, a case expressly dealing with documents "guarded as a proprietary matter by [the defendant]." (*Id*. at p. 360.) The *Hofmann Corp.* court ruled that, because "a limited protection is given to sensitive information which people may wish to keep confidential," the trial court erred in not applying a balancing test that considered " ' "the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections

17

urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances . . . ." (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 382-385.)' " (*Hofmann Corp*., at p. 362.) Of note, *Hofmann Corp.* did not mention section 1060, even though on remand the court was required to apply a balancing test — not merely determine relevance — before the "sensitive information" consisting of trade secrets could be ordered disclosed. (*Hofmann Corp.*, at p. 362.) For this reason, we do not deem Hoffman to have forfeited his right to have the trial court conduct an appropriate balancing test, and Quidel does not argue otherwise.

Once Hoffman asserted that the production of responsive documents necessarily contained BD's confidential and proprietary information, the trial court was required to — but did not — determine whether such confidential or proprietary information would be disclosed by Hoffman's production of responsive documents.[22] (*Hofmann Corp.*, *supra*, 172 Cal.App.3d at p. 362; *Bridgestone*, *supra*, 7 Cal.App.4th at p. 1393.) If so, then the court could compel disclosure only after conducting the requisite balancing test, depending on the court's findings as to the existence of confidential, proprietary or trade secret information contained in the responsive documents. (*Hofmann Corp*., at p. 362; *Bridgestone*, at p. 1393.) Here, rather than considering the evidence presented,

---

[22]    While we express no opinion on the ultimate determination, we note that in its return in this proceeding, Quidel argues that its requests do not call for the production of BD's proprietary information.

18

determining whether BD's confidential or proprietary or trade secret information would be disclosed, and if so then balancing the various factors as required where such information is affected, the court erroneously limited its consideration to the substantive cause of action (breach of contract) and applied the general standard for discovery under Code of Civil Procedure sections 2017.010 and 2017.020, subdivision (a). In so doing, the court abused its discretion. (*Paterno*, *supra*, 74 Cal.App.4th at p. 85 ["A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand."]; *Dyer v. Department of Motor Vehicles* (2008) 163 Cal.App.4th 161, 174 [same].)

Accordingly, we direct the trial court to set aside that part of the August 8 Order directing Hoffman to produce documents responsive to Quidel's relationship requests, along with the related award of $4,000 in sanctions. On remand, the court is to reconsider Quidel's motion under the appropriate standard and consistent with the views expressed herein.[23]

B. *Hoffman-BD Employment Requests*

With regard to the Hoffman-BD employment requests, Hoffman contends that the August 8 Order requires him to produce documents concerning his "private financial information" (other than his salary, which may be redacted). Concerning production of a

---

[23] We state no opinion as to the outcome on reconsideration. The court should first determine *whether* confidential or proprietary or trade secret information is implicated in Hoffman's responses. If so, *then* the court should exercise its discretion in determining whether, and if so under what conditions, the documents should be produced depending on the type(s) of information that will be disclosed — given the standards in *Hofmann Corp.*, *supra*, 172 Cal.App.3d 357, 362, and *Bridgestone*, *supra*, 7 Cal.App.4th 1384, 1393.

party's private financial information, *Moskowitz v. Superior Court* (1982) 137 Cal.App.3d 313 teaches:

> "Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution. . . . The constitutional right of privacy is not absolute; it may be abridged to accommodate a compelling public interest. . . . One such interest, evidenced by California's broad discovery statutes, is ' "the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings." ' . . . When an individual's right of privacy in his financial affairs conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced. . . . Even where the balance weighs in favor of disclosure of private information, the scope of the disclosure will be narrowly circumscribed; such an invasion of the right of privacy ' "must be drawn with narrow specificity" ' and is permitted only to the extent necessary for a fair resolution of the lawsuit." (*Id.* at pp. 315-316, fn. and citations omitted.)

We review for an abuse of discretion the trial court's order compelling disclosure of financial information after balancing the competing interests. (*Id.* at p. 317.)

According to Hoffman, the only request affected is No. 28, which seeks production of documents "that constitute, refer or relate to [Hoffman's] compensation package at [BD], including the terms of any commissions, bonuses, or incentives that are part of [Hoffman's] compensation package." In support of his position, Hoffman argues *only* that this request is not relevant to Quidel's claim for breach of the Confidentiality Agreement. In the trial court (and during the meet and confer process that preceded Quidel's motion), Quidel persuasively argued that Hoffman's compensation package is "directly relevant to the claims and his defenses in the case" — as it may establish a motive or incentive for Hoffman to disclose information in violation of the

20

Confidentiality Agreement.  Given these facts and the exchange during oral argument, we are satisfied that the trial court carefully balanced the competing interests.

Accordingly, Hoffman has not met his burden of establishing an abuse of discretion with regard to the Hoffman-BD employment requests.[24]

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate that part of its August 8, 2014 order directing Hoffman to produce documents responsive to Quidel's relationship requests, including the related award of $4,000 in sanctions.  The court is to reconsider Quidel's motion as to the Quidel relationship requests in a manner consistent with this opinion.  In all other respects, the petition is denied.  The stay issued by this court on August 26, 2014 is vacated.  In the interests of justice, the parties shall bear their own costs in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)


IRION, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.

---

[24]    In its return, Quidel did not respond to Hoffman's arguments concerning his right to privacy related to his compensation package.  We do not consider this a concession.  As the petitioner, Hoffman has the burden of establishing an abuse of discretion (*Denham*, *supra*, 2 Cal.3d at p. 566), and Hoffman has not met his burden.

21